UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT MCFADDEN                              1:20-CV-0746 (JLS-MJR)

                    Petitioner,              REPORT AND
                                             RECOMMENDATION
        v.


WILLIAM KEYSER,


                    Respondent.

_____

        This case has been referred to the undersigned pursuant to Section 636(b)(1) of

Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 9)

Petitioner Robert McFadden has filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.[1] (Dkt. No. 1) For the following reasons, it is recommended that the

petition be denied and that a certificate of appealability also be denied.

## BACKGROUND AND RELEVANT FACTS

### *The Indictment*

        On or about June 7, 2013, petitioner was indicted by a Monroe County grand jury

for two counts of second-degree murder: (1) intentional murder in violation of Section

125.25(1) of the New York State Penal Law; and (2) felony murder in violation of

Section 125.25(3) of the New York State Penal Law. (Dkt. No. 16-2, pg. 1) The charges

---

[1] The petition was initially filed by the petitioner *pro se*. On December 7, 2020, respondent filed a response and memorandum in opposition to the petition. (Dkt. Nos. 15, 16) On March 29, 2021, Michael Jos. Witmer, Esq. filed a Notice of Appearance on behalf of petitioner. (Dkt. No. 22) Witmer filed replies to respondent's opposition to the petition. (Dkt. Nos. 28, 29) The Court heard oral argument as to the petition on January 12, 2023, at which time Witmer appeared and argued on behalf of petitioner. (Dkt. No. 34)

involved the May 15, 2012 shooting death of Paul Awuol on Smith Street in Rochester, New York. Following pretrial proceedings, the case proceeded to trial before Monroe County Court Judge John L. Demarco.

*Trial Testimony*

Jessica Lang, Awuol's friend and the mother of Awuol's three-old-year old nephew, testified that on May 15, 2012, she, Awuol, her son, and her seven-year-old daughter went out for pizza after picking Awuol up from the community college he attended. (Dkt. No. 16-3, pgs. 689-90) Lang testified that the group was on their way to a festival but had stopped at her apartment so that her daughter could use the bathroom. (*Id.* at pgs. 693-94) Lang and her daughter went into the residence while Awuol waited outside with his nephew. (*Id.* at 695) Lang testified that, while she was in her apartment, she heard a "pop." (*Id.*) She went to her front door and her son ran towards her crying. (*Id.* at 696-97) She saw Awuol on the ground with blood running from his mouth. (*Id.* at 697) Lang then saw a tall black man getting into the passenger side of a black vehicle across the street. (*Id.*) As the vehicle drove away, Lang observed that the driver was a white female with a ponytail. (*Id.* at 698) Lang later identified the driver as petitioner's wife. (*Id.* at 700-01)

Tremaine Jackson, a resident of Smith Street, testified that he knew Awuol from the neighborhood. (*Id.* at 589-90) Jackson testified that on May 15, 2012, he saw Awuol talking to a brown-skinned man with braids. (*Id.* at 591) Jackson started to walk over to say hello but decided against it when he saw Awuol's face and demeanor, which suggested to Jackson that Awuol and the other man were having an argument. (*Id.*) Jackson saw Awuol turn to walk away from the man, but the man grabbed Awuol by the

arm, pulled him back, and put something to his chest. (*Id.* at 591-92) Jackson then heard a "little pop" and also heard Awuol scream out. (*Id.*) Jackson testified that, during the interaction, he never saw Awuol "do anything" to the man or make any movement towards him. (*Id.*) Awuol began to fall to the ground and Jackson observed the man go through Awuol's pockets. (*Id.* at 593) Jackson saw him remove something from Awuol's pocket but could not see what it was. (*Id.*) Jackson then observed the shooter get into the passenger side of a nearby car, and the vehicle drove off. (*Id.*)

Tavia Hines testified that, on May 15, 2012, she was attending a barbeque on Smith Street, across the street from where the shooting occurred. (*Id.* at 764-65) She saw Awuol and another man talking to each other across the street, heard a "big pow", and saw Awuol fall to the ground. (*Id.* at 766-69) She observed the other man bend down and pick something up at Awuol's feet, and then walk towards a black car. (*Id.*) Hines testified that she never observed Awuol make any motions toward the other man. (*Id.* at 770) Norma Murray testified that she lived a few houses down from where the shooting occurred and was sitting in her driveway at 6:00 p.m. on May 15, 2012. (*Id.* at 606-07) She testified that a small, dark-colored car stopped in front of her house and a young man got out. (*Id.* at 607, 612) Murray testified that the man was walking quickly, with his right hand inside his coat and his head down. (*Id.* at 607) The man approached Awuol, whom Murray had known for about a year. (*Id.* at 608) Murray testified that when the man was about 3 to 5 feet away from Awuol, she heard a pop and saw Awuol fall backwards to the ground. (*Id.* at 609-612) The man then got back into the car and drove away. (*Id.*) Murray testified that she never saw Awuol "do anything" to the other man, such as grab at him. (*Id.* at 610)

Annist Burroughs, petitioner's aunt, testified that petitioner came to her house on the night of the shooting. (Dkt. No. 16-4, pg. 7) Burroughs asked petitioner for some money. (*Id.*) Petitioner stated that he did not have any money, but he gave her a cell phone and said she could sell it. (*Id.* at 8-9) The next day, Burroughs called petitioner and told him to take back the phone, which he later did. (*Id.*)

Thomas Cassidy, investigator with the Rochester Police Department Homicide Unit, testified that in March 2013, nearly a year after the shooting, he and his partner interviewed petitioner. (*Id.* at 143) Petitioner first denied any knowledge of the shooting. (*Id.* at 145-46) Five days later, petitioner asked to speak with Investigator Cassidy again. (*Id.* at 146-47) At that time, petitioner waived his *Miranda* rights and admitted that he shot Awuol. (*Id.* at 147, 149-51) During the course of the interview with Cassidy, petitioner signed a written statement describing his account of the shooting, which was introduced as a trial exhibit. (Dkt. No. 16-4, pgs. 756-60) According to petitioner, his wife drove him to Smith Street so that he could sell a .25 caliber handgun to a man he knew as "K.G." (*Id.*) While looking for K.G., petitioner encountered Awuol, who said K.G. had left. (*Id.*) Petitioner stated that he showed the gun to Awuol to see if Awuol wanted to buy it. (*Id.*) According to petitioner, Awuol asked if he could hold the gun and petitioner said no. (*Id.* at 154) Petitioner stated that Awuol then reached for the gun, grabbed the barrel, and pulled. (*Id.*) Petitioner stated that Awuol was attempting to snatch or grab the gun away from him. (*Id.*) Petitioner stated that his finger was on the trigger guard of the firearm when Awuol tried to pull the gun away, and that the gun fired, accidently, as a result. (*Id.*) Petitioner stated that after the gun went off, the chamber jammed and did not expel the shell casing. (*Id.* at 760) Petitioner stated that this was because Awuol

4

"was holding the barrel and the slide [of the gun] so it didn't work right." (*Id.*) Petitioner stated that after the gun went off, he saw a cell phone on the ground which he believed was his. (*Id.* at 151) Petitioner stated that he took the phone, got back into the car with his wife, and left the scene. (*Id.*) Petitioner later realized the phone belonged to Awuol, and he gave it to his aunt. (*Id.* at 154-55) When petitioner's aunt gave Awuol's phone back to petitioner the next day, petitioner smashed the phone and disposed of the parts. (*Id.* at 155) Petitioner then sold the gun to someone else and abandoned the car that he was traveling in when the shooting occurred. (*Id.* at 155)

During his interview with investigators, petitioner repeatedly stated that the shooting was an accident, that he had no issues or problems with Awuol, and that he never intended to shoot Awuol or to harm him in any way. (*Id.* at 154) In emphasizing that the shooting of Awuol was purely accidental, petitioner told investigators: "No one knew what was gonna happen that day, not even myself. [The shooting] wasn't supposed to happen. It wasn't a robbery or nothing. I was just trying to sell him a gun." (*Id.* at 155)

John Clark, a forensic firearms examiner for the Monroe County Crime Laboratory, examined the fired projectile or bullet recovered in connection with the shooting of Awuol on May 15, 2012. (Dkt. No. 16-3, pgs. 719-20) Clark testified that the bullet used to kill Awuol was fired from a .25 caliber semi-automatic pistol. (*Id.* at 722, 724) Clark further testified that a .25 caliber semi-automatic pistol will typically expel an empty cartridge casing or shell casing after a bullet is fired. (*Id.* at 726-27) Clark explained that there are occasions where a semi-automatic round is fired, but the shell casing is not properly ejected. (*Id.* at 730-31) This scenario is referred to as a

malfunction or a failure to eject.[2] (*Id.*) Clark testified that there are multiple reasons why a failure to eject could occur. (*Id.* at 731-32) Clark explained that a failure to eject could occur if someone's hand is behind the weapon when it fires, thus preventing the slide (the portion of the firearm which travels to the rear when the gun is fired) from moving back and expelling the empty casing. (*Id.* at 731-33) Other reasons cited by Clark for failure to eject a shell casing included a lack of sufficient gunpowder, the failure to support the firearm with a firm hand, the failure to properly clean or lubricate the firearm, degraded ammunition, and damp or wet ammunition or gunpowder. (*Id.*) Clark also testified that shell casings are harder to recover when a gun is fired outdoors. (*Id.* at 749)

*Jury Charge, Conviction and Sentencing*

During the jury charge conference with the trial court, petitioner asked that the jury be instructed to consider first-degree manslaughter and second-degree manslaughter as lesser-included offenses of the intentional murder count charged in the indictment. (Dkt. No. 16-4, pg. 218) The prosecutor did not object, and the trial court granted the request, finding that "there is a reasonable view of the evidence, particularly in a light most favorable to [petitioner], to support the charging of the jury as to both manslaughter in the first degree and manslaughter in the second degree." (*Id.*)

The trial court proceeded to instruct the jury to consider the intentional murder charge and, if they acquitted petitioner on that count, they were to consider the charge of first-degree manslaughter. (*Id.* at pgs. 330-31) Likewise, the jury was instructed that if

---

[2] During the trial, it was undisputed that no shell casing or cartridge casing was found at the scene of the May 15, 2012 shooting of Awuol. (Dkt. No. 16-3, pg. 736-37)

6

they acquitted petitioner of first-degree manslaughter, they were then to consider the charge of second-degree manslaughter. (*Id.*)

The jury acquitted petitioner of both counts of murder in the second degree charged in the indictment (intentional murder and felony murder) as well as the lesser included offense of first-degree manslaughter. (*Id.* at 367-68) The jury found petitioner guilty, however, of the lesser included offense of second-degree manslaughter. (*Id.*) On December 2, 2014, the trial court sentenced petitioner, a second-time felony offender, to a prison term of 7½ to 15 years. (Dkt. No. 388)

*Petitioner's Direct Appeal*

Petitioner filed a counseled, direct appeal of his conviction to the Appellate Division, Fourth Department. (Dkt. No. 16-2, pgs. 4-24) Therein, petitioner claimed that he received ineffective assistance of counsel because his trial lawyer failed to request a jury instruction on the defense of justification, as well as failed to request that the jury be instructed as to the lesser-included offense of criminally negligent homicide. (*Id.*) On May 4, 2018, the Appellate Division unanimously affirmed petitioner's conviction, finding that he had received meaningful representation by counsel and that even if counsel should have requested the additional charges cited by petitioner, the failure to do so was not the type of "clear cut and completely dispositive error" associated with ineffective assistance of counsel. *See People v. McFadden*, 161 A.D.3d 1570 (4th Dep't 2018); *citing People v. Turner*, 5 N.Y.3d 476, 481 (2005).

Through counsel, petitioner sought leave to appeal the denial of his ineffective assistance of trial counsel claim to the New York State Court of Appeals. (Dkt. No. 16-2,

pgs. 62-64) On July 10, 2018, the Court of Appeals denied leave to appeal. *See People v. McFadden*, 31 N.Y.3d 1150 (2018).

### Error Corbin Nobis Motion

On May 24, 2019, petitioner filed a *pro se* motion for a writ of error *coram nobis* from the Appellate Division. (Dkt. No. 16-2, pgs. 67-254) Petitioner claimed that his appellate counsel erred by (1) failing to argue on appeal that trial counsel was ineffective because he sought the lesser-included offense instruction for first-degree manslaughter but not criminally negligent homicide; (2) failing to highlight forensic testimony presented by the prosecution at trial which supported petitioner's defense that the gun discharged accidently; (3) making a "meritless" argument that trial counsel was ineffective in not requesting a justification defense; (4) not challenging the admission of certain letters written by petitioner before trial: and (5) failing to argue that the prosecutor knowingly failed to correct false testimony during the trial. (*Id.*)

The Appellate Division denied petitioner's motion on September 27, 2019. (*Id.* at 279-80). Petitioner sought leave to appeal from the Court of Appeals. (*Id.* at 281-85) The Court of Appeals denied leave to appeal and also denied petitioner's subsequent motion for reconsideration. *See People v. McFadden*, 34 N.Y.3d 1079 (2019), *reconsideration denied*, 35 N.Y.3d 943 (2020).

## DISCUSSION

Petitioner first seeks federal habeas relief on the grounds that his trial counsel was ineffective for: (1) failing to request that the jury be instructed on the defense of justification; and (2) failing to request that the jury be charged as to the lesser-included offense of criminally negligent homicide. For the following reasons, the Court disagrees.

*Review of State Court Decisions Under the AEDPA*

Where, like here, an appellate court has adjudicated, on the merits, the same claims raised in a federal habeas petition, a federal court's review of those same claims is governed by a "highly deferential standard…which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *quoting Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Specifically, under the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), a federal court cannot grant a petition for a writ of habeas corpus based on a claim that was "adjudicated on the merits in a State court proceeding" unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

To that end, a habeas petition should be granted on the grounds of unreasonableness only if "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (the AEDPA standard for review is intended "only as a guard against extreme malfunction in the state's criminal systems, …not a substitute for ordinary error correction through appeal."). In fact, the existence of "reasonable arguments on both sides" is "all [the government] needs to prevail in [an] AEDPA case." *White v. Woodall*, 572 U.S. 415, 427 (2014).

### Strickland Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, 466 U.S. 668, 669 (1984), the Supreme Court established a two-prong test for evaluating Sixth Amendment ineffective assistance of counsel claims. First, a defendant must prove that counsel's performance was deficient, *i.e.*, "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, a defendant must establish that counsel's deficient performance resulted in prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Judicial scrutiny of counsel's performance under the first prong is highly deferential. *Id.* at 689. To that end, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Thus, a reviewing court must make allowances for counsel's strategic choices and apply "a heavy measure of deference to counsel's judgments." *Id.* at 691.

Furthermore, a reviewing court has flexibility in how it decides a claim of ineffective assistance. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Consequently, if a defendant does not successfully establish the performance prong, the ineffective assistance claim fails, and the prejudice prong becomes moot. *Id.*

### Review of Strickland Claims under the AEDPA

As just described, both *Strickland* and the AEDPA require highly deferential standards of review. Accordingly, "[e]stablishing that a state court's application of

*Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal quotation marks and citations omitted). Thus, to succeed on an ineffective assistance of counsel claim, a petitioner seeking federal habeas relief must show, not that the state court applied *Strickland* incorrectly, but that the state court applied *Strickland* "in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). *See also Woods v. Donald*, 575 U.S. 312, 316-17 (2015) (explaining that the federal court must "afford both the state court and the defense attorney the benefit of the doubt.") (internal citations and quotations omitted).

## Application to the Facts Here

With these principles in mind, the Court finds that petitioner has not shown that trial counsel's failure to request jury charges of justification and criminally negligent homicide fell below an objective standard of reasonableness. Petitioner also fails to show that the Appellate Division's denial of his ineffective assistance of trial counsel claim was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented at trial.

To be successful on a justification defense in this case, petitioner would have had to prove to the jury that (1) he reasonably believed Awuol was about to use deadly force against him; and (2) he reasonably believed that shooting Awuol was necessary to defend himself. *See* N.Y. Penal Law § 35.15. This Court has reviewed the state court

record and has found little to no evidence supporting this defense. None of the eyewitnesses to the shooting testified that Awuol physically attacked or even threatened to attack petitioner, nor did any of these witnesses observe Awuol touch or grab petitioner in any manner. In fact, three eyewitnesses all similarly and consistently testified that Awuol did not engage in any violent or aggressive behavior before petitioner shot him. Moreover, in his statement to the police, as well as throughout the trial and appellate proceedings, petitioner steadfastly maintained that (1) the gun fired accidently when Awuol tried to grab it from him and (2) he never intended to shoot Awuol or harm him in any way. Indeed, the crux of petitioner's entire defense at trial was that the shooting was accidental. Thus, there was no evidence before the jury to indicate that Awuol was about to use deadly force against petitioner or that petitioner reasonably believed that shooting Awuol was necessary to defend himself.[3] "An attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application." *Dark v. Crowley*, 16-CV-6432, 2020 U.S. Dist. LEXIS 199560, at *18 (W.D.N.Y. Oct. 27, 2020); *McFadden*, 161 A.D.3d 1570 (4th Dept. 2018) (finding no basis for the justification defense in this case, in part because a person cannot "accidently act in self-defense."). Because there is no indication in the record that a

---

[3] Petitioner claims, in part, that a justification charge was appropriate here because the defense applies when an individual reasonably believes that the other person is committing or attempting to commit a robbery. *See* NY Penal Law § 35.15. Even if the jury were to credit petitioner's self-serving statement to police that Awuol grabbed the gun and tried to pull it away, there is little to no evidence in the record that Awuol was actually attempting to rob petitioner. Moreover, even if there was evidence of a robbery, there was no evidence that petitioner shot Awuol as a response to an attempted robbery. Indeed, petitioner's own statements to the police were that the gun fired accidently. Petitioner never claimed that he was acting in self-defense or to prevent a robbery. Likewise, no account from any witness to the shooting supported a theory that petitioner shot Awuol to stop Awuol from robbing him.

12

justification defense was applicable here, the failure of trial counsel to pursue such a defense cannot be deemed ineffective assistance.

The Court rejects petitioner's claim that the Appellate Division's denial of his ineffective assistance claim was based on an unreasonable determination of the facts because testimony from the firearms examiner showed that Awuol was holding the gun when it fired. John Clark testified that a .25 caliber semi-automatic firearm was used in the shooting of Awuol, and that this type of weapon will typically expel an empty shell casing after firing. During the trial, it was undisputed that no shell casing was recovered from the scene of the shooting. Clark testified that one potential explanation for failure to expel is if someone held their hand *behind* the gun when it was fired, thus preventing the slide of the firearm from traveling backward and releasing the casing. Contrary to petitioner's claim here, this testimony is far from conclusive, or even suggestive, proof of a justified shooting. First, petitioner told police that Awuol's hand was on the barrel of the gun when it fired, not behind it as noted by Clark. Also, none of the witnesses to the shooting, with the exception of petitioner, testified that Awuol's hand was anywhere on the gun when it fired. Lastly, even if Clark's testimony did suggest that Awuol's hand was on the gun when it fired, the record still lacked any proof that petitioner shot Awuol in self-defense, as opposed to by accident.[4]

Further, even if there was evidence in the state court record to support a justification defense, it still cannot be said that trial counsel was ineffective here. A

---

[4] In fact, petitioner's trial counsel made a logical argument that the missing shell casing, considered together with Clark's testimony, corroborated petitioner's statements to police that the shooting was purely accidental. Counsel noted that, according to Clark, the failure to eject a shell casing may also have been caused by petitioner not having a firm grip on the weapon. Counsel argued that petitioner's statements that Awuol was grabbing at the gun and that the gun fired accidently are both consistent with petitioner not having a firm grip on the weapon at the time it fired.

lawyer's decision not to pursue an available defense does not constitute deficient performance where "the lawyer had a reasonable justification for the decision." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005); *Horton v. Ercole*, 557 F. Supp. 2d 308, 316 (N.D.N.Y. 2008) (counsel's "decision not to pursue a justification defense…represents a tactical choice that is virtually unchallengeable."). Here, trial counsel apparently elected to forego a justification defense and to argue that the trial testimony and forensic evidence was consistent with an accidental shooting. This strategy was a reasonable and logical tactical determination fully supported by the evidence in the case and is not to be second guessed by a reviewing court. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices.").

Further, this Court agrees with the Appellate Division's assessment that trial counsel was not ineffective for declining to raise the inconsistent defenses of both accidental shooting and self-defense, which would have risked "confusing the jury as to the nature of the defense" and "tainting defendant's credibility." *See McFadden,* 161 A.D.3d at 1571 ("Counsel's failure to request a [justification charge] may have been based on a reasonable strategic determination that such charge would be counterproductive and difficult to reconcile with the accidental [shooting] claim."); *Abraham v. Lee*, 13 Civ. 2525, 2014 U.S. Dist. 99639, at *28-30 (S.D.N.Y. July 22, 2014) (rejecting claim that counsel was ineffective for not presenting both justification

and alibi defenses and noting that "[p]resenting inconsistent defenses to a jury is a risky tactic, and foregoing this tactic does not make counsel ineffective.").[5]

The Court likewise rejects petitioner's claim that his trial counsel was ineffective for failing to request that the jury be charged as to the lesser-included offense of criminally negligent homicide ("CNH"). In rejecting petitioner's ineffective assistance of counsel claim, the Appellate Division concluded that while "there was a reasonable view of the evidence that defendant negligently shot the victim, ....it would have been a reasonable strategy for defense counsel to decide not to request criminally negligent homicide as a lesser included offense because, without the charge, the chances of defendant being acquitted outright were increased." *McFadden*, 161 A.D.3d at 1570-71 (noting that it is reasonable for an attorney to adopt an "all or nothing" strategy at trial). This Court agrees with the assessment of the Appellate Division.

A charge of manslaughter in the first degree requires proof of intent to cause serious physical injury. *See* N.Y. Penal Law § 125.20(1). A charge of manslaughter in the second degree requires proof that the defendant acted recklessly, *i.e.*, proof that defendant was aware of a substantial and unjustifiable risk that another's death would occur, and that the defendant consciously disregarded that risk. *Id.* at § 125.15(1); Dkt.

---

[5] In his reply brief, petitioner cites cases for the proposition that "a defendant is entitled to a charge of justification if the evidence, viewed in a light most favorable to defendant, so warrants." *People v. Mercer*, 267 A.D.2d 1019 (4th Dep't 1999). Unlike the cases cited by petitioner, this is not a scenario where counsel requested a justification defense, the evidence warranted the defense, and the trial court improperly refused to instruct the jury as to the defense, nor is it a scenario where a trial court gave an incomplete or insufficient justification charge. Instead, the question presented here is whether it was unreasonable for trial counsel to forego a justification defense in favor of an accidental shooting defense, as well as whether it was unreasonable for trial counsel to decline to pursue inconsistent defenses. For all the reasons just stated, this Court finds that trial counsel's decision not to request a justification defense was a reasonable and sound trial strategy decision based on all the evidence in the record and does not constitute ineffective assistance.

No. 16-4, pg. 334. A person is guilty of CNH when, with criminal negligence, he causes the death of another person. *See* N.Y. Penal Law § 125.10. In contrast to recklessness, criminal negligence only requires proof that the defendant failed to perceive the substantial and unjustifiable risk that another's death would occur. *See* N.Y. Penal Law § 15.05.

Here, if the jury credited petitioner's claim that the gun went off accidently when Awuol unexpectedly tried to grab it from him, there was good reason to believe that petitioner would have been acquitted not only of intentional and felony murder, but also of both lesser-included offenses of manslaughter, which require either intent to cause harm or deliberate recklessness. However, if the jury credited petitioner's account of the shooting and CNH was charged as a lesser-included offense, there was good reason to believe that the jury would have convicted petitioner of CNH, since criminal negligence may be consistent with an accidental shooting. Thus, it was reasonable for trial counsel not to request a CNH charge based on the apparent theory that if the jury believed petitioner, he was more likely to be acquitted of all charges.

Where, like here, counsel appears to have "had valid, strategic reasons for not seeking a lesser-included charge," his judgment is entitled to a "heavy measure of deference." *Guerra v. Fischer*, 13-CV-00031, 2013 U.S. Dist. LEXIS 176999 (E.D.N.Y. Dec. 17, 2013); *accord Greiner*, 417 F.3d at 319. Moreover, courts in this Circuit have repeatedly rejected ineffective assistance of counsel claims for failure to request a lesser-included offense charge, on the basis that these decisions are matters well within the judgment of trial counsel. *See e.g., Brown v. Rick*, 01 Civ. 4310, 2003 U.S. Dist. LEXIS 21305 (S.D.N.Y. Nov. 25, 2003) (holding that counsel not ineffective for failing to

inform defendant of right to request lesser included offense because such a request is a matter of strategy); *Rios v. United States*, CV-91-4384, 1992 U.S. Dist. LEXIS 16444, (E.D.N.Y. Oct. 13, 1992) ("Courts have declined to find ineffective assistance of counsel where counsel pursues an exculpatory defense although such a choice practically precludes a request for an instruction on a lesser included offense. . . . The tactical decision to pursue a complete, exculpatory defense rather than a partial one enjoys substantial deference."); *Breazil v. Artis*, 15-CV-1912, 2015 U.S. Dist. LEXIS 172939 (E.D.N.Y. Dec. 30, 2015) ("Cases too numerous to cite have recognized that the decision of whether to request submission of a lesser included offense is a matter well within the judgment of trial counsel.").

In his reply brief, petitioner contends that it was illogical for counsel to argue throughout the trial that the shooting was accidental and to then request a manslaughter charge, which has an intentional element. Petitioner claims that the fact that trial counsel asked for a manslaughter charge, but did not request a CNH charge, shows that he had "no strategy at all." The Court disagrees. The record here shows that trial counsel's apparent strategy gave the jury the option of convicting petitioner of manslaughter—thereby allowing them to convict him of something less than intentional murder—while also maintaining some chance for a full acquittal if the jury believed petitioner's claim that the shooting was an accident. Conversely, if the jury rejected the prosecutor's arguments and accepted petitioner's account, it is highly likely that petitioner would have been convicted of CNH if such offense was as option, since an unintended and unanticipated death, *i.e.,* accidental, could still qualify as CNH. *See Smith v. Walsh*, 02 Civ. 5755, 2003 U.S. Dist. LEXIS 11895 (S.D.N.Y. July 14, 2003)

(finding that counsel was not ineffective for failing to request charge on lesser-included offense because such a charge "would have undermined counsel's strategy of seeking an acquittal"); *Ramdeo v. Phillips*, 04 Civ. 01157, 2007 U.S. Dist. LEXIS 49483 (E.D.N.Y. July 9, 2007) (Defense counsel's strategy, which denied guilt altogether, "practically preclude[d] a request for an instruction on a lesser included offense.").

The Court also rejects petitioner's argument that post-trial statements by defense counsel prove that his failure to request a CNH charge was not the result of any trial strategy but rather an error or oversight that demonstrates ineffective assistance. In an April 26, 2018 letter from appellate counsel to petitioner, appellate counsel indicated that he contacted petitioner's trial counsel, Matthew Lemkpe, Esq., and that Lempke informed appellate counsel that he had no recollection as to why he did not request a lesser-included offense charge of CNH. (Dkt. No. 29-1, at pgs. 1-2)[6] Lempke's statements to appellate counsel, which are hearsay, demonstrate only that he does not specifically remember this particular aspect of petitioner's case. His statements are not probative of a lack of strategy or ineffective assistance. Moreover, for all the reasons just discussed, the Court finds Lempke's strategy to be both apparent and reasonable on the face of the record. *See Greiner*, 417 F.3d at 305 (counsel's inability to recall why he abandoned a possible defense strategy when queried years after the trial did not establish a Sixth Amendment ineffective assistance of counsel violation where a justification for his decision appeared on the record).

In sum, this Court agrees with the Appellate Division's assessment that trial counsel's representation of petitioner was not deficient and was instead objectively

---

[6] Respondent maintains that these letters are not part of the record in this case and should not be considered by this Court. Because the Court finds that the letters do not support petitioner's claims, this issue is moot.

reasonable in all respects.[7] Thus, petitioner's ineffective assistance of trial counsel claim should be denied in all respects.[8]

Petitioner next seeks federal habeas relief on the grounds that his appellate counsel was ineffective for: (1) failing to raise an ineffective assistance of trial counsel claim in a collateral, post-conviction motion, *see* N.Y. C.P.L. § 440.10, instead of on direct appeal; and (2) failing to cite relevant case law and facts in support of the arguments, raised on direct appeal, that trial counsel was ineffective. For the following reasons, the Court concludes that petitioner is not entitled to habeas relief based on ineffective assistance of appellate counsel.

### Legal Standard for Ineffective Assistance of Appellate Counsel

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland* for analyzing

---

[7] Even if this Court disagreed with the Appellate Division's assessment that trial counsel was not ineffective for failing to request justification and CNH charges, which it does not, this Court would still recommend denial of petitioner's habeas claim, since it certainly cannot be said here that the Appellate Division applied *Strickland* in an "objectively unreasonable" manner. *See Harrington*, 131 S. Ct. at 785 ("When § 2254 applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Stickland's* deferential standard.").

[8] The Court notes here that trial counsel provided not just reasonable representation, but also meaningful, quality and largely successful representation. Counsel obtained an acquittal on both the intentional murder and felony murder charges, even though petitioner admitted that he took Awuol's phone after shooting him, as well as an acquittal on first degree manslaughter. There were several eyewitnesses to the shooting, none of whom testified that they saw Awuol try to grab the gun from petitioner. Despite this evidence, defense counsel persuaded the jury that petitioner did not intentionally shoot Awuol. At the time of sentencing, the trial judge indicated that while he respected the jury's verdict, he did not agree with it, since he had "little doubt in his mind that [petitioner] shot at Awuol." (Dkt. No. 16-4, pg. 385) The trial judge proceeded to sentence petitioner to the maximum sentence permitted under the law. The trial judge further told petitioner that he would have imposed a longer sentence if the legislature permitted him to do so, and that petitioner was "a pretty fortunate individual to only be receiving this sentence." (*Id.* at pgs. 387-88)

such claims as to trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *citing Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). As noted *supra*, under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove: (1) that appellate counsel's representation was fundamentally defective, and (2) that, absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001); *Mayo*, 13 F.3d at 533-34.

Moreover, the Appellate Division rejected petitioner's error *coram nobis* petition on the merits, which raised the same ineffective assistance of appellate counsel claims pursued here. Thus, the AEDPA's doubly deferential standard of review applies. *See Devaughn v. Graham*, 14 Civ. 2322, 2017 U.S. Dist. LEXIS 7640, at *50 (E.D.N.Y. Jan. 18, 2017).

### *Application to the Facts Here*

Petitioner claims that his appellate counsel's representation was fundamentally defective because counsel raised an ineffective assistance of trial counsel claim on direct appeal to the Appellate Division, rather than through a post-conviction § 440.10 motion before the trial court. Petitioner contends that the ineffective assistance claim was more likely to have been successful on a § 440.10 motion since, unlike a direct appeal, a § 440.10 motion can raise issues and develop facts outside the trial record.

There is no Sixth Amendment right to counsel in collateral proceedings, such as post-conviction § 440.10 motions. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Thus, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See also Colon v. Shehan*, 13 Civ. 6744, 2016 U.S. Dist. LEXIS

91930, at *14-15 (S.D.N.Y. July 12, 2016). Here, the filing of a § 440.10 motion was outside the scope of appellate counsel's representation of petitioner, and petitioner was not entitled to representation in the filing of such a motion. Thus, appellate counsel cannot be deemed ineffective for failing to raise the argument of ineffective assistance of trial counsel in a post-conviction motion. *See Aviles v. Capra*, 13-CV-1153, 2014 WL 4805036, at *12 (E.D.N.Y. Sept. 26, 2014) ("Here, because there is no right to counsel to pursue collateral relief under § 440.10, petitioner's claim that his appellate counsel should have expanded the record through a § 440.10 motion must fail"); *Browne v. Heath*, 11 CV 1078, 2014 WL 8390320, at *30 (E.D.N.Y. Aug. 25, 2014) (finding without merit an ineffective assistance of counsel claim premised on counsel's failure to file a § 440 motion to vacate a prior conviction, and noting that "counsel had no obligation to file this motion, and therefore could not have been ineffective.").[9]

Petitioner also claims that appellate counsel was ineffective for failing to cite relevant case law and important facts from the trial record in presenting the ineffective assistance of trial counsel claims to the Appellate Division. More specifically, petitioner does not claim that counsel failed to raise certain claims on appeal, but instead

---

[9] In a letter dated April 26, 2018, appellate counsel advised petitioner that counsel could not represent him on a § 440.10 motion. (Dkt. No. 29-1, pg. 2) Appellate counsel further instructed petitioner that, on direct appeal, he could only raise issues that were part of the record before the trial court. (*Id.*) Appellate counsel informed petitioner that if petitioner wished to raise issues outside of the record, such as the reasons why trial counsel did not request a CNH charge, petitioner could attempt to obtain an affidavit from trial counsel with further details in that regard. (*Id.*) Appellate counsel advised petitioner that such an affidavit could then be used in support of a *pro se* motion under § 440.10. (*Id.*) In a subsequent letter dated May 22, 2018, appellate counsel advised petitioner that if trial counsel did not respond to petitioner's inquiries regarding an affidavit, petitioner should file a *pro se* § 440.10 with his own affidavit in support of the claims. (*Id.* at pg. 3) Thus, not only did appellate counsel accurately advise petitioner that he did not and could not represent petitioner in a post-conviction motion, but counsel also accurately advised petitioner as to how petitioner might himself attempt to raise issues outside of the record by bringing a *pro se* § 440.10 motion. There is no indication in the record that petitioner ever filed, or attempted to file, a § 440.10 motion.

contends that counsel did not argue the claims he did bring in an effective manner by citing the most persuasive law and facts.

Applying the highly deferential standard noted above, this Court has no difficulty concluding that petitioner received adequate and meaningful representation in prosecuting his appeal. In a thorough and well-reasoned brief to the Appellate Division, appellate counsel cogently argued that trial counsel was ineffective for failing to request jury charges of justification and CNH. (Dkt. No. 16-2, pgs. 4-24) Therein, appellate counsel cited multiple New York State Court of Appels and Appellate Division cases in support of these arguments. (*Id.*) Appellate counsel also made detailed references to facts in the trial court record in an attempt to show that requests for such jury charges were both warranted and necessary under the law. (*Id.*) In response to the government's brief in opposition to the appeal, appellate counsel filed a reply brief, with case law and facts, that further addressed, and attempted to refute, the government's most salient arguments. (Dkt. No. 16-2, pgs. 46-58) Thus, petitioner's contention that appellate counsel failed to cite relevant case law and pertinent facts in his appeal briefs is without merit. *See Franza v. Stinson*, 58 F. Supp. 2d 124 (S.D.N.Y. June 7, 1999) (denying habeas relief based on petitioner's claim that appellate counsel's sufficiency and weight of evidence argument was too short and failed to cite to the relevant facts and federal case law, because a review of the appellate briefs showed that counsel made cogent and cognizable arguments and "aptly recited the relevant facts and case law.").

Further, counsel's purported failure to raise each and every argument now cited by petitioner in support of the ineffective assistance of trial counsel claims does not

demonstrate ineffectiveness. Appellate counsel is entrusted with the discretion to decide which points to argue since, as the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 536 (1986); *quoting Jones v. Barnes*, 463 U.S. 745, 751-52. Just as a trial counsel's strategic choices deserve deference, an appellate counsel's strategy in selecting the issues or arguments to be presented should not be second guessed based on hindsight. See *Belle v. Superintendent*, 9:11-CV-0657, 2013 U.S. Dist. LEXIS 34481 (N.D.N.Y. Mar. 13, 2013).[10] For these reasons, the Court finds that petitioner's request for habeas relief based on ineffective assistance of appellate counsel is without merit.

Finally, petitioner seeks habeas relief on the grounds that failure to charge the jury as to justification and/or the lesser-included offense of CNH resulted in a fundamentally unfair trial and a violation of his federal due process rights. The Court rejects these claims because (1) they are unexhausted and procedurally defaulted and (2) there is no basis for avoiding the procedural default here.

---

[10] Petitioner's ineffective assistance of appellate counsel claim also fails because he cannot show prejudice. To establish prejudice in the appellate context, a petitioner must show that, had his claims been raised on appeal, there is a reasonable probability that they would have succeeded before the state's highest court. *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015). As discussed in detail previously, this Court has found that petitioner was afforded effective assistance of trial counsel. Moreover, the Appellate Division thoroughly considered, and then rejected on the merits, petitioner's claims on direct appeal that his trial counsel was ineffective for failing to pursue a justification defense or a lesser-included offense charge of CNH. This determination was then affirmed by the New York State Court of Appeals. Petitioner has not, and cannot, demonstrate that, had appellate counsel presented the ineffective assistance claims in the same manner as argued by petitioner in this action, his challenges to trial counsel's performance were reasonably likely to have prevailed before the Court of Appeals.

_Due Process Claims are Unexhausted and Procedurally Defaulted._

A petitioner must exhaust all available state remedies, either on direct appeal or through collateral attack on his conviction, before he may seek relief in federal court. _See_ 28 U.S.C. § 2254(b)(1)(A); _Jackson v. Conay_, 763 F.3d 115, 133 (2d Cir. 2014). In order to exhaust all state remedies, "the petitioner must appraise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." _Galdamez v. Keane_, 394 F.3d 68, 73-74 (2d Cir. 2005). Thus, "[a] claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" _Jones v. Vacco_, 126 F.3d 408, 413 (2d Cir. 1997); _quoting Daye v. Attorney Gen. of the State of New York_, 696 F.2d 186, 190-91 (2d Cir. 1982). Stated another way, the exhaustion requirement means that a petitioner must have presented the state courts with the same claim he urges upon the federal courts. _See Picard v. Connor_, 404 U.S. 270, 275-76 (1971).

Petitioner seeks habeas relief on the basis that the trial court's failure to instruct the jury as to justification and/or the lesser-included offense of CNH violated his federal constitutional right to due process. However, petitioner never raised this federal due process claim, or any due process claim for that matter, before the state courts. To be sure, petitioner _did_ assert, on direct appeal in state court, that he was _denied effective assistance of counsel_ based on the trial counsel's failure to request justification and CNH charges. However, "[a]n ineffective assistance claim is separate and distinct from the substantive claim incorporated in the ineffective assistance claim, such that exhaustion of the ineffective assistance claim is not exhaustion of the underlying

substantive claim." *Bond v. Walker*, 68 F. Supp. 2d 287, 296 (S.D.N.Y. 1999); *aff'd* 242 F.3d 364 (2d Cir. 2000). Thus, courts in this Circuit have consistently recognized that an ineffective assistance of counsel claim is an insufficient vehicle for exhausting the underlying allegations where, like here, those allegations are asserted for the first time as separate claims in a habeas petition. *Chapman v. Bradt*, 07 Civ. 6583, 2015 U.S. Dist. LEXIS 32760, at *28-29 (W.D.N.Y. Mar. 17, 2015). *See e.g., Hall v. Phillips*, 04-CV-1514, 2006 U.S. Dist. LEXIS 101821 (E.D.N.Y. Dec. 15, 2006) (claims in habeas petitioner regarding improper jury charges were unexhausted where such challenges to the jury charges were raised on the state level but only in the context of an ineffective assistance of counsel claim); *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (where petitioner challenged effectiveness of appellate counsel in an error *coram nobis* motion, petitioner exhausted only his ineffectiveness claim, and not the claims underlying the ineffectiveness claim); *McCray v. Capra*, 15 Civ. 1129, 2017 U.S. Dist. LEXIS 140972, at 22-23 (N.D.N.Y. Aug. 31, 2017) ("Courts have thus declined to find a claim to be exhausted when it has been presented to the state courts only in the context of an ineffective assistance claim."). Thus, petitioner's due process claim is unexhausted.

When a habeas petition presents unexhausted claims, the reviewing federal court must determine whether the petitioner would be able to return to state court to exhaust those claims. *See Jackson*, 763 F.3d at 133. If the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, the federal court reviewing the habeas petition must deem the claim procedurally defaulted. *See Aparicio*, 269 F.3d at 90. That is the case here.

Petitioner has already used the one direct appeal to which he was entitled. *See Cunningham v. Conway*, 717 F. Supp. 2d 339, 365 (W.D.N.Y. 2010). Collateral review of petitioner's claim in state court is also barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted petitioner to raise his due process claims, which are premised on the allegedly faulty jury charges, on direct appeal. *Id.; see also* N.Y. Crim. Proc. Law § 440.10(2)(c) (mandating denial if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal).

Because petitioner no longer has any available state court remedy, his due process claims are deemed exhausted but procedurally defaulted, *Aparicio*, 269 F.3d at 90, and this Court cannot review the merits of procedurally defaulted claims. *See Cox v. Eckert*, 351 F. Supp. 3d 373, 375 (W.D.N.Y. 2019) (in cases of procedural default," the prisoner generally is barred from asserting those claims in a federal habeas proceeding."). Moreover, a dismissal of an application for habeas relief on the grounds of procedural default amounts to a disposition of the habeas claim on the merits. *Carvajal v. Artus*, 633 F.3d 95 (2d Cir. 2011).

<u>*No Basis for Avoiding Procedural Default of Due Process Claim*</u>

An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating cause for the default and actual prejudice or by showing that he is actually innocent of the crime for which he was convicted. *Carvajal*, 633 F.3d at 104; *accord Aparicio*, 269 F.3d at 90. Petitioner cannot meet either requirement here.

In order to present sufficient cause to excuse default, petitioner must show that his failure to present his due process claim on appeal was attributable to some external factor that prevented him from being able to raise the claim. *See Wilson v. Graham*, 18 Civ. 0192, 2020 U.S. Dist. LEXIS 195136, at *7 (W.D.N.Y. Sept. 17, 2020). Petitioner has not identified any external factor which prevented him from raising a due process claim before the state court.[11] Thus, he fails to show cause for the default.[12]

To demonstrate "actual prejudice" under the standard for excusing a procedural default, a habeas petitioner must show the constitutional errors raised in the petition actually and substantially disadvantaged petitioner's defense so that he was denied "fundamental fairness." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). *See also United States v. Fra*dy, 456 U.S. 152, 170, (1982) (petitioner must "shoulder the burden of showing not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.") (emphasis in original). As explained below, petitioner cannot show that the trial court's failure to instruct the jury as to CNH or

---

[11] To the extent petitioner is arguing that ineffective assistance of counsel caused default, the Court rejects this claim. For all the reasons detailed herein, the Court has found that petitioner was provided was effective and meaningful representation by appellate counsel. To the extent that appellate counsel did not raise a due process argument based on the jury charges on direct appeal, the Court finds this to have been a reasonable decision by counsel to make only the strongest arguments. Indigent defendants do not have "a constitutional right to compel appointed counsel to press nonfrivolous points...if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[12] Petitioner's failure to demonstrate cause is sufficient, by itself, for this court to fail to excuse procedural default and reject the due process claim. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985). *See also Nickels v. Conway*, 10 Civ. 0413, 2015 U.S. Dist. LEXIS 95638, at *21-22 (W.D.N.Y. Jul. 22, 2015) (failure to show cause for not lodging a timely and specific contemporaneous objection was fatal to petitioner's ability to excuse the procedural default based on the "cause and prejudice" exception); *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995) ("Since [the petitioner] has failed to show cause, there is no need to address the prejudice requirement."). However, for purposes of completeness and to show that petitioner's due process claims should still be dismissed as meritless even if not defaulted, the Court examines the prejudice prong of the "cause and prejudice" exception as well.

justification resulted in a substantial disadvantage affecting the entire trial, nor can he show that his constitutional right to due process was actually violated. *See Pettigrew v. Bezio*, 1:10-CV-1053, 2012 U.S. Dist. LEXIS 67893, (W.D.N.Y. May 15, 2012) (concluding that a petitioner cannot show actual prejudice where the underlying defaulted claim is meritless).

A state court's failure to give a particular jury instruction does not raise an issue of federal constitutional magnitude unless the error "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *quoting Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973). To that end, the Second Circuit has established a three-step inquiry to guide determination of habeas claims based on a trial court's refusal to give a jury charge: (1) whether the petitioner was entitled to the charge under state law; (2) if so, whether the failure to give the charge resulted in a denial of his federal due process rights; and (3) if so, whether the state court's decision constituted an unreasonable application of clear Supreme Court law. *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005); *accord Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001).

Here, petitioner was not entitled to a justification charge and there is reason to believe that, had the charge been given, the outcome of the trial would have changed. Three eyewitnesses to the shooting testified that Awuol made no threatening movements toward petitioner whatsoever. While petitioner told police that Awuol put his hand on the gun, a claim that was wholly uncorroborated by any other witness' testimony, petitioner further told police that the gun fired by accident and that he did not intend to shoot or harm petitioner. Thus, there was no reasonable basis in the evidence

for the jury to have found that petitioner shot Awuol in self-defense. *See Holmes v. Crowley*, 17 Civ. 6118, 2018 U.S. Dist. LEXIS 191780, at *7 (W.D.N.Y. Nov. 8, 2018) (habeas petition denied where no reasonable view of the evidence showed that the victim was committing or attempting to commit a burglary, and the trial court did not err as a matter of law in declining to instruct the jury to consider whether petitioner was justified in using deadly physical force to prevent the victim from committing or attempting to commit a burglary.)

The same conclusion must be reached with respect to the absence of a jury charge for the lesser-included offense of CNH. Under New York law, a trial court is required to submit applicable lesser-included offenses to the jury only if a request is made by either party. *See* N.Y. C.P.L. § 300.50(2); *People v. Hernandez*, 273 A.D.2d 479, 479-80 (2d Dep't 2000). Absent such a request, the trial court's failure to submit a lesser-included offense to a jury does not constitute error. *See* N.Y. C.P.L. § 300.50(2). Here, a CNH charge was not requested by either party. Thus, petitioner cannot show that he was entitled to the charge under state law. *See Jackson*, 404 F.3d at 621-24 (before considering whether the omission violated due process the court must consider whether state law required an instruction that the state court failed to grant).[13]

Lastly, neither the Supreme Court nor the Second Circuit has announced a rule mandating that in non-capital cases, even where the evidence warrants a lesser-

---

[13] Not only was petitioner not entitled to a CNH instruction under state law, but the Court also finds it unlikely that, had the trial court provided this instruction, the outcome of the trial would have been different. The jury convicted petitioner of second degree manslaughter, which requires a finding that petitioner *perceived* a substantial risk of another's death and consciously disregarded it. Having found beyond a reasonable doubt that the petitioner here did, in fact, perceive the risk of death, there is no reason to believe that the jury would have instead found, after hearing all the same evidence, that petitioner was actually guilty of CNH, which requires a showing that he *failed to perceive the risk*.

included charge, due process requires a trial court to submit the lesser-included offense. *See Daniels v. Lee*, 17-CV-7922, 2022 U.S. Dist. LEXIS 102009 (S.D.N.Y. June 6, 2022). Thus, courts have routinely denied federal habeas petitions which claim, like petitioner does here, a violation of federal due process rights based on a state trial court's failure to submit a lesser-included offense charge to the jury in a non-capital case. *See Jin Wai v. Fischer*, 02 Civ. 3778, 2003 U.S. Dist. LEXIS 18921 (SDNY Oct. 21, 2003) (denying petition, in part, because courts are precluded from granting habeas petitions for challenges to the failure to give a lesser-included offense charge in a non-capital case); *Durden v. Greene*, 492 F. Supp. 2d 414 (S.D.N.Y. 2007) (finding habeas claim not cognizable because it cannot be said that there is a "clearly established" right under federal law to the submission of lesser-included offenses in non-capital cases); *Strong v. New York*, 20-CV-45, 2022 U.S. Dist. LEXIS 155160 (WDNY Aug. 29, 2022) (denying habeas claims based on failure of trial court to instruct jury on lesser-included offense and noting that the Second Circuit has held that federal courts may not consider habeas claims on this basis in non-capital cases).

Alternatively, a petitioner may obtain habeas review of a procedurally defaulted claim if he can establish that such review is necessary to correct "a fundamental miscarriage of justice." *Coleman v. Johnson*, 501 U.S. 722, 748 (1991). Such cases are limited to a "narrow class" of "truly extraordinary" cases presenting "credible and compelling claims of actual innocence." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019); *accord Schlup v. Delo*, 513 U.S. 298, 315 (1995). Actual innocence "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."

*Schlup*, 513 U.S. at 329 (internal citations omitted). Here, the petition is devoid of references to any new evidence tending to show that petitioner is actually innocent of the crime for which he was convicted. *See Nickels*, 2015 U.S. Dist. LEXIS 95638, at *23. (rejecting miscarriage of justice argument where petitioner pointed to "no new evidence whatsoever to establish that he was not criminally responsible for the…death [and] [i]ndeed [did] not come forward with any evidence that the trial court [or] finder-of-fact has not heard.").

In sum, petitioner has demonstrated neither cause and prejudice nor a miscarriage of justice and his federal due process claims should be dismissed on the merits as subject to an unexcused procedural default.

## CONCLUSION

For the foregoing reasons, it is recommended that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied in its entirety and on its merits. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, it is also recommended that a Certificate of Appealability not be issued.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See*  Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:      March 24, 2023
            Buffalo, New York

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge